THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v TERRANCE BREAZIL, Respondent. [860 NYS2d 137]—

Appeal by the People from an amended order of the Supreme Court, Kings County (Mangano, Jr., J.), dated March 7, 2007, which, after a hearing, granted the defendant's motion pursuant to CPL 440.10 to vacate a judgment of the same court (Feldman, J.), rendered November 25, 1996, convicting him of murder in the second degree, attempted murder in the second degree, and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence, suppressed physical evidence and his lineup identification, and directed a new trial.

Ordered that the amended order is modified, on the law, by deleting the provision thereof suppressing the defendant's lineup identification; as so modified, the amended order is affirmed.

On May 15, 1995 McKiver "Michael" Kinard and Wendell Porter were shot in Brooklyn. The perpetrator fled the scene. Kinard later died from his wounds. On May 22, 1995, upon a recanvass of the crime scene, an unidentified person told Detective Alex Lloyd and his partner that the defendant Terrance Breazil was responsible for the shooting. The person also told the detectives the defendant's approximate age, that he once lived in the Fort Greene projects, and that he had been released from prison about one year earlier. On June 1, 1995, after confirming that the information provided was accurate, Detective Lloyd filed a "wanted" card for the defendant.

In the early morning hours of July 17, 1995, police officers

responded to an anonymous 911 call of a robbery in progress at the corner of Franklin Avenue and Fulton Street in Brooklyn. The "sprint report" of the call stated "[s]ix males robbing one male, one male with a gun wearing all white, second male wearing number three jersey on a bike in front of 24-hour deli store." The officers arrived on the scene within minutes and observed the defendant on a bicycle, wearing white, and heading eastbound on Fulton Street. The officers exited their vehicle, placed the defendant against the wall, and frisked him. The frisk revealed, inter alia, a handgun. A showup identification was conducted, but the robbery victim stated that the defendant was not involved. However, the defendant was arrested for possession of the handgun.

Later that same day, Detective Lloyd was notified of the defendant's arrest through the New York City Police Department Detective Unit. Once he learned of the arrest, he located the defendant's place of detention, 120 Schermerhorn Street in Brooklyn. The next day, July 18, 1995, he brought the defendant to the 84th precinct, where he conducted a lineup. At the lineup, the defendant was identified by an eyewitness as the perpetrator of the May 15, 1995 shooting. In 1996 the defendant was convicted of murder in the second degree, attempted murder in the second degree, and criminal possession of a weapon in the second degree. However, in 2001, the defendant moved to vacate his judgment of conviction pursuant to CPL 440.10 on the ground that the stop and frisk was unconstitutional under the then recently-decided case of *Florida v J.L.* (529 US 266 [2000]). Therefore, he argued, the handgun seized during the stop and the subsequent lineup evidence should have been suppressed. The Supreme Court granted the defendant's motion to vacate the judgment of conviction, suppressed the physical evidence and lineup identification, and directed a new trial. We modify.

The Supreme Court properly determined that the defendant's arrest on July 17, 1995 was not based on probable cause and was, therefore, illegal (*see Florida v J.L.,* 529 US 266 [2000]; *People v Moore,* 6 NY3d 496 [2006]). Thus, it properly granted the defendant's motion to vacate the judgment, suppressed the physical evidence seized from his person following that arrest, and directed a new trial.

However, the Supreme Court erred in also suppressing the lineup evidence. Under the factual circumstances of this case, any taint due to the defendant's illegal arrest was sufficiently attenuated prior to his being placed in the lineup (*see Wong Sun v United States,* 371 US 471, 488 [1963]; *People v Jones,* 2 NY3d

235, 241-242 [2004]; *People v Rogers,* 52 NY2d 527, 535 [1981], *cert denied* 454 US 898 [1981]; *People v Thigpen,* 234 AD2d 486 [1996]; *People v White,* 232 AD2d 437 [1996]; *People v Watson,* 200 AD2d 643 [1994]; *see also People v Conyers,* 68 NY2d 982, 983-984 [1986]).

The People's remaining contention is without merit. Ritter, J.P., Florio, Carni and Leventhal, JJ., concur. [*See* 15 Misc 3d 493.]